IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RAYMOND D. HASTINGS, #135 351, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:13-CV-698-WHA |
| | ) | [WO] |
| KENNETH SCONYERS, WARDEN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff files this *pro se* 42 U.S.C. § 1983 action claiming Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment because they failed to protect him from an inmate assault. According to the complaint, the assault occurred on the Native American grounds at the Easterling Correctional Facility on September 13, 2013. Named as Defendants are Warden Kenneth Sconyers, Nathaniel Lawson, Brian Gordon, and Anthony Askew. Plaintiff requests damages, costs, and placement in a single cell until his transfer to another facility where he can practice his religion without fear of harm from other inmates. Doc. # 1.

Defendants filed a special report and supporting evidentiary materials addressing Plaintiff's claims for relief. Doc. # 26. In this filing, Defendants deny they acted in violation of Plaintiff's constitutional rights. *Id.* Upon receipt of Defendants' special report, the court issued an order directing Plaintiff to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Plaintiff that "the court may at any time thereafter and without notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment." Doc. # 28 at 2. Plaintiff responded to Defendants' report, *see*

Doc. # 29, but his response does not demonstrate there is any genuine issue of material fact.[1] *See* Doc. # 28 at 2. The court will treat Defendants' report as a motion for summary judgment, and concludes this motion in due to be resolved in favor of Defendants.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id.* at 322−324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex,* 477 U.S. at

---

[1] Any broadening or expansion of Plaintiff's claims in his opposition to Defendants' dispositive motion to include other distinct constitutional claims and/or additional claims for relief is not properly before the court. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend h[is] complaint through argument in a brief opposing summary judgment.").

324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION

### A. Absolute Immunity

To the extent Plaintiff sues Defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79

L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, Defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B. Injunctive and/or Declaratory Relief

Plaintiff's request for declaratory and/or injunctive relief against Defendants is due to be dismissed as moot. Plaintiff is no longer incarcerated at the Easterling Correctional Facility. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Plaintiff is no longer incarcerated at the Easterling Correctional Facility, his request for equitable relief is moot.

### C. Deliberate Indifference

#### 1. Failure to Protect

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-845 (1994) (internal quotations and citations omitted). Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

"Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staff. They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984). The Eleventh Circuit has, however, "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.' *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)." *Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005). "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation, including one alleging deliberate indifference to an inmate's safety. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). Regarding the

requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh v. Butler Cty., Alabama*, 268 F.3d 1014, 1028-1029 (11th Cir. 2011), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  On the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'  . . .  [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 837-838; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (*citing Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind.  *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . .  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also draw that inference.  *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

6

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (internal quotation marks omitted). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." B*urnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*.

Consequently, to survive the properly supported motion for summary judgment filed by Defendants, Plaintiff must first demonstrate that an objectively substantial risk of serious harm existed to him and "that the defendant disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), *citing Caldwell*, 748 F.3d at 1100. If he establishes these objective elements, Plaintiff must then satisfy the subjective component. To do so, Plaintiff must show that Defendants "subjectively knew that [he] faced a substantial risk of serious harm. The [D]efendant[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. [*McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)]. In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear felt by [the] [p]laintiff." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added). Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn

7

>that a substantial risk of serious harm exists - and the prison official must also draw that inference." *Id*. at 1349 (quotations omitted).").

*Johnston v. Crosby*, 135 Fed. App'x 375, 377 (11th Cir. 2005)

Plaintiff alleges Defendants acted with deliberate indifference to his safety on September 13, 2013, when they failed to protect him from an inmate assault. On this date at approximately 12:00 p.m., three or four inmates attacked Plaintiff from behind as he was walking on the yard on his way to chow. Plaintiff yelled and then jumped up and ran without looking behind him or slowing down until he reached the administration building where he reported the attack to Defendant Lawson. Plaintiff attributes the assault to either the Aryan or Southern Brotherhood gangs who, he claims, ordered a contract (hit) on him because he told prison officials on September 11, 2013, the groups were burying knives on the Native American ceremonial grounds. According to Plaintiff, with the exception of Defendant Gordon, the other defendants knew these two groups had been a threat to him since February 2013 because he had written them letters. Regarding Defendant Gordon, Plaintiff claims that prior to the assault on September 13, 2013, he phoned Defendant Gordon at #77 around 10:00 a.m. but he "did nothing about known Brotherhood contract on Plaintiff." Finally, Plaintiff alleges Defendants failed "to make proper inquiries into incidents, claims, or to properly protect plaintiff from injury on 9-13-2013" in retaliation for his filing lawsuits. Doc. # 1 at 2-7.

Defendants' evidence includes affidavits from Warden Sconyers, Captain Lawson, Sergeant Gordon, and Chaplain Askew, incident reports, and a body chart. These documents reflect that on September 13, 2013, at approximately 12:20 p.m. Plaintiff reported to the back of Easterling's Administration Building and told correctional officials he had been assaulted from behind by unknown assailants on the yard near the trade school as he was walking to the chow hall. Captain Willie Bryant noticed blood on the top of Plaintiff's head and the side of his face.

8

Captain Bryant notified Warden Sconyers of the incident. Plaintiff was then escorted to the health care unit for examination and treatment of his injuries.[2] Captain Bryant and Defendant Lawson interviewed Plaintiff while he was in the infirmary. The guards questioned Plaintiff about the identity of his assailants but having been hit from behind and knocked down, Plaintiff indicated he did not know who assaulted him and he did not turn to look in their direction. Plaintiff yelled after he was knocked down and his attackers ran off as he ran in the opposite direction. Doc. # 26, Ex. 2 at 2-4.

Following his release from the medical unit, Captain Bryant and Defendant Lawson questioned Plaintiff again about the identity of his attackers. Plaintiff steadfastly maintained he was unaware of who assaulted him but indicated a belief the perpetrators could be members of the Southern Brotherhood or Aryan Brotherhood. Pending further investigation into the incident, Plaintiff was processed into the administrative segregation unit. On September 18, 2013, Captain Bryant continued his investigation into the September 13th incident including further questioning of Plaintiff. Plaintiff reiterated he was unaware of the identity of the inmates who assaulted him. Although Plaintiff stated the Southern Brotherhood Organization had put a hit on him, he could not identify the inmate who had ordered the hit and, according to the incident report, he requested he not be put back in population. As part of his investigation Captain Bryant interviewed other inmates regarding the identity of the inmates who assaulted Plaintiff but these inmates either could not identify Plaintiff's assailants and/or had not witnessed the attack. Doc. No. 26, Ex. 2 at 2-4, Exs. 3, 4.

Prior to the September 13, 2013, incident, Plaintiff informed Defendant Lawson on September 11, 2013, that knives were buried in the ground next to the Indian Grounds. Plaintiff

---

[2] Plaintiff's body chart shows he had abrasions to the right side of his jaw, left side of his cheek, top of his head, and left elbow, and scratches to his lower back. Doc. # 26, Ex. 2.

9

did not identify the inmates he observed burying the knives but advised Defendant Lawson he told inmate Bobby White about seeing the knives being buried. Defendant Lawson had a correctional officer search the Indian Grounds with a metal detector. The search uncovered two inmate made ice picks. Doc. #26, Ex. 4.

Defendant Lawson, who was in the health care unit on September 13, 2013, when Plaintiff arrived for treatment of his injuries, states Plaintiff informed him that inmates in population told him (Plaintiff) that members of the Southern Brotherhood and Aryan Brotherhood knew he had divulged the existence of knives buried on the Indian Grounds and stated inmate White may have seen his assailants. Captain Bryant and Defendant Lawson questioned inmate White but he claimed no knowledge of the identity of Plaintiff's attackers. According to Defendant Lawson, Plaintiff requested he be placed back in population believing his attackers only wanted to scare not hurt him and explaining that he did not fear for his safety in population. Without knowing the identity of Plaintiff's assailants, however, Defendant Lawson informed Plaintiff he would be placed in Administrative Segregation for his own safety. Defendant Lawson disclaims any knowledge regarding Plaintiff's assertion that he was present when another inmate threatened Plaintiff in March 2013 at the chapel in front of Defendant Askew and maintains that at no time prior to September 13, 2013, did Plaintiff inform him he had been threatened by any inmate at Easterling. Doc. #26, Ex. 4; *see also* Doc. # 1, Exs. 1, 2.

Defendant Gordon is a correctional sergeant employed by the Alabama Department of Corrections' ["ADOC"] Investigation and Intelligence Division. He denies any knowledge of Plaintiff calling the Hotline-#77-on the inmate phone system in June and/or September 2013 to report either an assault by a correctional officer or that a contract had been placed on him by the

Bortherhood.[3] The Hotline is monitored by individuals in the central offices of the Investigations and Intelligence Division. Defendant Gordon is not assigned to monitor the PREA Hotline and indicates non-PREA related phone calls are e-mailed to Investigations and Intelligence Director, Randy Yarbrough, for dissemination to the appropriate source. Defendant Gordon never received any instructions or assignments regarding Plaintiff. Doc. # 26, Ex. 5.

Defendant Askew is a chaplain with the ADOC assigned to the Easterling Correctional Facility. He denies knowledge of the September 13, 2013, incident involving the assault on Plaintiff or any plots or threats by the Southern or Aryan Brotherhood to hurt him. Doc. # 26, Ex. 6.

Plaintiff claims Defendants acted with deliberate indifference to his safety regarding the attack perpetrated against him by unknown inmates on September 13, 2013.  To support this assertion, Plaintiff alleges that "conflicts and issues (threats) have been going on for months," and Defendants "knew of a risk" because overcrowding has resulted in divided yard time which allows any inmate, including non-native American brotherhoods to "use and abuse" the Native American grounds by desecrating the grounds, disrupting ceremonies, and threatening and attacking "(us) plaintiff because they want [the] spiritual grounds to the[m]selves."[4] *See* Doc. # 1, Ex. 3 at 3; Doc. # 29 at 3-4. There is, however, no probative evidence before the court of "an objectively substantial serious risk of harm" posed by any inmate to Plaintiff prior to the attack as is necessary to establish

---

[3] The PREA Hotline (#77 on the inmate phone system), is delegated by the Prison Rape Elimination Act ["PREA"] to provide inmates with a source for reporting sexual offenses to the Investigations and Intelligence Division. Doc. # 26, Ex. 5.

[4] The court declines Plaintiff's requests to refer to pleadings and/or other evidence he submitted in a separate civil case as support for the claims presented in this action.  The court previously denied Plaintiff's *Motion to Relate*, advising him that "[a]ny arguments [he]wishe[d] the court to consider with regard to the captioned action should be filed in this case." *See* Doc. #s 30, 31; *see also* Doc. # 1, Ex. 3, Doc. # 29, Hastings Affidavit.

deliberate indifference. *Marsh*, 268 F.3d at 1028-1029. The evidentiary materials submitted by Defendants refute Plaintiff's allegations they acted with deliberate indifference to his safety. Absent is any evidence Defendants actually knew of a risk to Plaintiff from another inmate regarding the incident about which he complains. *Carter*, 352 F.3d at 1349, 1350 ("[T]here must be much more than mere awareness of [a] ... generally problematic nature [of another inmate].... [A] generalized awareness of risk ... does not satisfy the subjective awareness requirement."); *see also Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) ("[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm.").

Even had Plaintiff satisfied the objective component of his deliberate indifference claim, he fails to establish the subjective component because he has not shown that any defendant subjectively knew of a risk of harm to him posed by other inmates. While Plaintiff submitted with his complaint copies of correspondence from March and February of 2013 addressed, respectively, to Governor Bentley and Defendant Askew regarding being threatened by the Aryan and Southern Brotherhoods over inmate usage and activities on the Native American grounds,[5] such is insufficient to demonstrate that any Defendant knew or should have known that a substantial risk existed of serious harm to Plaintiff from attack by inmates on September 13, 2013. *Johnson*, 568 F. App'x at 722 (complaint properly dismissed for failure to state a claim because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed [to the plaintiff] by [his inmate-attacker]."); *McBride v.*

---

[5] Plaintiff's letter to Governor Bentley described being threatened on March 20, 2013 by an inmate with the Aryan Bortherhood regarding use of the Native American grounds. In his February 27, 2013, correspondence addressed to Defendant Askew, Plaintiff asserted he had been threatened by "A.B.'s and S.B.'s" to not touch any rope or personal plot area on the Native American garden area. *See* Doc. # 1, Exs. 5-6.

12

*Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as Plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" where Plaintiff merely advised he "had problems" with fellow inmate and was "in fear for [his] life."); *Johnston*, 135 F. App'x at 377 (Where allegations simply inferred that prison officials should have known that inmate-attacker posed a threat to others due to past behavior and general verbal threats, defendants were entitled to summary judgment because Plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [fellow inmate]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any fear [he] felt."); *Chatham v. Adcock*, 334 F. App'x 281, 293-294 (11th Cir. 2009) ("[A]lthough Plaintiff asserts that [fellow inmate] threatened him repeatedly in the days before the assault, Plaintiff has not identified any specific 'serious threat' from [fellow inmate], which he then reported to [the defendants]. . . . The fact that [attacker] was a 'problem inmate' with 'violent tendencies' simply 'does not satisfy the subjective awareness requirement.'"). Even if Defendants were negligent in carrying out some of their duties, mere negligence cannot support a finding of deliberate indifference. *See Farmer*, 511 U.S. at 835. Because Plaintiff has failed to show that Defendants actually knew a substantial risk of serious harm existed, he has failed to satisfy the subjective element of his Eighth Amendment claim as well, and summary judgment is due to be granted in Defendants' favor on Plaintiff's failure-to-protect claim.

### D. Retaliation

Plaintiff maintains that the conduct and/or action taken by Defendants regarding the failure-to-protect claim presented against them was motivated by their desire to retaliate against him for "legal claims filed." Doc. # 1 at 3. A claim that a plaintiff was penalized for exercising a

constitutional right is properly considered under the First Amendment. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999) (*en banc*). The First Amendment protects inmates from retaliation by prison officials for filing administrative grievances and lawsuits. *Wright v. Newsome*, 795 F.2d 964 (11th Cir. 1986); *Farrow v West*, 320 F.3d 1235, 1248 (11th Cir. 2003). "The gist of a retaliation claim is that a prisoner is penalized for exercising a right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989); *Farrow*, 320 F.3d at 1248. Broad and conclusory allegations of retaliation, however, are insufficient and cannot demonstrate the existence of each element requisite to establishing retaliation. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1266 (11th Cir. 2009), *overruled on other grounds by Mohamad v. Palestinian Auth.*, ___U.S. ___, 132 S.Ct. 1702 (2012), (stating that "in testing the sufficiency of the plaintiff's allegations, we do not credit ... conclusory allegations as true"). *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (Because prisoner retaliation claims are prone to abuse, "we are careful to require non-conclusory allegations.").

In ruling on an inmate's First Amendment retaliation claim, courts use a burden shifting analysis. *Moton v. Cowart*, 631 F.3d 1337, 1341–42 (11th Cir. 2011). Plaintiff must establish three elements: "(1) 'his speech or act was constitutionally protected'; (2) 'the defendant's retaliatory conduct adversely affected the protected speech'; and (3) 'there is a causal connection between the retaliatory actions and the adverse effect on speech.'" *Id*. at 1341 (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)); *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008); *Thaddeus-X*, 175 F.3d at 397. Regarding the causation prong, a court "asks whether the defendants were subjectively motivated" by Plaintiff's protected act. *Smith*, 532 F.3d at 1278. Such causal connection may be shown via a chronology of events which create a plausible inference of retaliation. *Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988). If Plaintiff shows

that "his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant." *Moton*, 631 F.3d at 1341–42 (quoting *Smith*, 532 F.3d at 1278). Upon production of evidence demonstrating a legitimate reason for the conduct and/or actions in question, Plaintiff, with the ultimate burden of proof, must show there is a genuine dispute of material fact concerning Defendants' defense. *See Osterback v. Kemp*, 300 F. Supp. 2d 1238, 1254 (N.D. Fla. 2003). Because any adverse action taken against a prisoner by a prison official can be characterized by the inmate as a retaliatory act, federal courts must "carefully scrutinize" retaliation claims brought by prisoners challenging adverse actions of correctional personnel, *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), and "approach prisoner claims of retaliation with skepticism and particular care. *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). This is [necessary because prisoners'] . . . claims of retaliation are . . . easily fabricated [and] pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized [by the prisoner] as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

Here, there is no evidence that Defendants' alleged failure to protect Plaintiff from an inmate assault was done in retaliation for his litigation activities. Plaintiff simply makes a conclusory allegation that Defendants' motive for allegedly failing to protect him from the September 13, 2013, inmate assault was retaliation, but he alleges no facts that support this conclusion, and the record does not support a claim that retaliation was the but-for cause of the action about which Plaintiff complains. *Mt. Healthy*, 429 U.S. at 287. Defendants are, therefore, due to be granted summary judgment on Plaintiff's retaliation claim.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (Doc. # 26) be GRANTED;

2. This case be DISMISSED with prejudice;

3. Judgment be ENTERED in favor of Defendants.

It is further

ORDERED that **on or before July 25, 2016**, the parties may file objections. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done this 11th day of July, 2016.

    /s/   Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE